## In re TATECO, INC., Debtor.

## TATECO, INC., Plaintiff,

v.

## NEAL MANUFACTURING COMPANY, INC., Defendant.

Bankruptcy No. 82–06231.
Adv. No. 84–0605.

United States Bankruptcy Court,
N.D. Alabama.

Dec. 7, 1984.

Findings of Fact and Conclusions Concerning Request for Preliminary Injunction Dec. 10, 1984.

894

Thomas J. Knight and Julian Stephens, III, Anniston, Ala., for debtor.

Randall M. Woodrow, Anniston, Ala. and Van C. Wilks, Carrollton, Ga., for defendant.

## PRELIMINARY INJUNCTION TO DEBTOR

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

Pursuant to the hearing held in the above-styled adversary proceeding before the bankruptcy judge, on December 6, 1984, after due notice to the debtor, Tateco, Inc., and to the defendant, Neal Manufacturing Company, Inc., and in accordance with the findings of fact and conclusions by the Court to be entered herein on the present day, the bankruptcy judge finds that the motion by the defendant for a preliminary injunction to the debtor is well taken and should be granted to the extent and on the terms and conditions herein stated; therefore, it is ORDERED by the Court as follows:

1. The debtor is restrained from and forbidden to proceed further with preparations for the holding of its proposed "trade show", scheduled to be held at the Holiday Inn, Downtown, Atlanta, Georgia, December 9–12, 1984, or any part thereof or any similar activity and from the holding of said "trade show" or any part thereof or any similar activity, until after December 12, 1984; provided, however, that the debtor may continue its preparations for and may hold said "trade show" if the debtor fully, effectively, and conscientiously adheres to and carries out the following requirements:

(a) The debtor shall do no act and shall not fail to prevent any act reasonably within its control which will interfere in any way with the defendant's "annual seminar" to be held at the Marriott Hotel, Downtown, Atlanta, Georgia, December 9–12, 1984, as said "annual seminar" is now advertised and planned, but the holding of said "trade show" by the debtor shall not be deemed to be such interference;

(b) The debtor shall not display or permit to be displayed any sign, legend, or symbol which may be seen from the indoor or outdoor premises of said Marriott Hotel or the outdoor premises of said Holiday Inn and which may be construed as an advertisement or notification of the holding of the "trade show" of the debtor (by direct or indirect reference thereto) or as an invitation to attend same;

(c) At said Holiday Inn, the debtor shall display neat and readily-legible at a distance of twenty feet signs which clearly indicate (without other symbol or legend) that there is no connection between Tateco, Inc., and its "trade show" and Neal Manufacturing Company, Inc., and its "annual seminar," with the fact that the latter is in progress across the street at the Marriott Hotel—with one of said signs to be prominently displayed in each of two well-frequented public areas and with one of said signs to be prominently displayed in each of two well-frequented areas where debtor maintains or holds its "trade show";

2. The debtor shall cease immediately and is restrained and forbidden from any further advertisement of said "trade show" or solicitation of any entity for attendance at or participate in said "trade show," except location notices or signs displayed within said Holiday Inn and not out of conformity with any other provisions of this order;

3. All persons, firms, corporations, or other entities having notice or knowledge of this injunction shall be bound by the terms hereof and are restrained and forbidden to act for, in concert with, or separately from the debtor in any act forbidden or contrary to this order;

4. Notwithstanding any other provision of this order, its effect is stayed until the defendant has given security in the sum of ten thousand dollars (United States legal tender) in accordance with the provisions of Federal Rule of Civil Procedure 65(c); and

5. A copy of this order and of said findings of fact and conclusions by the Court shall be furnished by the clerk of the Bankruptcy Court to the attorneys for the debtor, the attorneys for the defendant, said Holiday Inn, and to the United States trustee for this district, which shall be sufficient service and notice hereof.

## FINDINGS OF FACT AND CONCLUSIONS CONCERNING REQUEST FOR PRELIMINARY INJUNCTION

*Introduction—*

The above-styled case is pending before this Court under Chapter 11, Title 11, United States Code. The above-styled adversary proceeding was commenced in this case by a complaint filed by the debtor, Tateco, Inc., against the defendant, Neal Manufacturing Company, Inc., on December 3, 1984.

The complaint alleges that the debtor manufactures and sells certain machinery and equipment in national markets in competition with the defendant, that the debtor has developed a "trade show" to be conducted in Atlanta, Georgia, and has devoted a substantial amount of money to the advertising and preparations for the proposed "trade show," and that on November 29, 1984, the defendant informed the debtor by letter (made a part of the complaint) that the debtor's proposed "trade show" would unfairly and unlawfully interfere with the defendant's "annual seminar" to be held in Atlanta on December 9 through December 12, 1984, and would not be tolerated by the defendant. The complaint seeks to have the Court declare that the debtor's "trade show" is a proper activity, that the defendant's attempt to interfere with this activity is improper and illegal, and whether damages should be assessed against the defendant as a result of its conduct. The complaint further seeks to have the Court restrain the defendant generally from any acts or activities which would hamper competition by the debtor with the defendant and to grant general relief.

On December 5, 1984, the defendant filed in this adversary proceeding an answer and counterclaim, as well as a motion for a preliminary injunction to forbid the debtor from holding or conducting its "trade show." On December 5, 1984, the defendant also filed a motion for an expedited or emergency hearing upon its motion for an injunction, together with the affidavit of W. Harold Neal, president and chief executive officer of the defendant. Attached to the affidavit are copies of various fliers issued by the debtor or by the defendant, some of which advertise the debtor's "trade show" or the defendant's "seminar," proposed to be held in Atlanta.

At the request of the defendant, the Court held a hearing upon the defendant's motion for a preliminary injunction, commencing at 11:00 o'clock a.m. on December 6, 1984, which was concluded during the afternoon of the same day. Here follow the Court's findings of fact and conclusions.

*Findings of Fact—*

After undertaking the hearing, it appeared to the Court that there might not be any substantial dispute as to the facts involved in this matter. That this was so

became apparent after a statement of various facts by counsel for the defendant and references to the affidavit of W. Harold Neal. Counsel for the debtor conceded that the statements made by the defendant's counsel and made in the affidavit were substantially correct, except for words which represented conclusions or were interpretive or gave coloration to the position of the defendant. Debtor's counsel, however, objected to the reference in the affidavit to the contents of telephone calls stated to have been received by the defendant, concerning the debtor's proposed "trade show," and the Court sustained the objection. Counsel for the debtor also made a statement concerning the expenses incurred by the debtor in advertising and preparing for its proposed "trade show," and this statement is not disputed by the defendant. Only one exhibit was offered in evidence, being Debtor's Exhibit 1 (a copy of a trade paper containing an advertisement of the debtor's proposed "trade show"), which was received without objection.

From the statements of counsel made during the hearing, which amounted to an informal stipulation of facts and from the exhibit, the Court finds that the relevant facts are undisputed and are as follows:

1. The defendant manufactures and sells portable asphalt seal coating equipment and pavement crack fillers. The coating equipment sprays a viscous sealing fluid, such as coal-tar-pitch emulsions, containing suspended solid matter (such as sand), onto an unprotected asphalt surface. The debtor is a direct competitor with the defendant in this business. The defendant's place of business is in Villa Rica, Georgia, while that of the debtor is at Anniston, Alabama.

2. About the year 1980, the defendant began to develop a sales-promotional program by which asphalt pavement contractors (who would be potential customers for its equipment), would be invited to attend a trade seminar and equipment showing or demonstration produced by the defendant. This program developed into the defendant's "annual seminar," and its seminar last year was held at the Downtown Marriott Hotel in Atlanta, Georgia, December 7–10, 1983. The debtor advertised and held an "open house" at its place of business in Anniston, Alabama, December 5–12, 1983, for its "friends and customers to drop by for refreshments and a chance to browse around and compare [its] equipment." A flier advertising debtor's "open house" included a detailed travel map for reaching debtor's place of business from Interstate 20, which connects, among other places, Atlanta and Anniston.

3. Continuing its promotional program, the defendant has advertised and scheduled, at an estimated financial commitment of $50,000.00, an "annual seminar" to be held December 9–12, 1984, and, again, at the Downtown Marriott Hotel in Atlanta. Defendant has advised potential attendees that a $75.00 per person registration fee is required, that the last day to register was November 23, 1984, that the Marriott Hotel was offering attendees a special rate of $66.00 per night, and that valuable prizes would be given away.

4. The debtor has advertised and proposes to hold a "trade show," called a "1985 Live Operation Pavement Maintenance Expo." The debtor proposes to hold its "trade show" at the Downtown Holiday Inn, located across the street from the Downtown Marriott Hotel, in Atlanta, December 9–12, 1984, with the hours being from 6:00 a.m. to midnight each day. In some of its advertising, debtor has stated that its 1984 "free Pavement Maintenance Expo" will be held at the "Holiday Inn in beautiful Downtown Atlanta (adjacent to the Marriott)." The debtor has incurred in excess of $9,000.00 in expenses in advertising and preparing for its "trade show." The debtor has made arrangements with one of its customers and possible arrangements with two others to attend and take delivery there of equipment sold by the debtor.

5. In about the year 1977 defendant adopted the trade name of "Seal-Mor" for its line of equipment, and about the year

1981, the debtor adopted the trade name of "Seal Mate" for the debtor's line of equipment. After defendant adopted its trade name, it began to use in its advertising a cartoon-like character called "Sammy Seal Mor." Later, debtor began to use in its advertising a cartoon-like character which it called "Sandy Seal-Mate."

6. In some of debtor's advertising in the year 1982, "Sandy Seal-Mate" displays a cartoon which depicts "Acme Co." as getting rich while a customer (presumably) is plagued and distressed with machine "breakdowns." In March of 1984, the debtor's advertising material was similar except that "Acme Co." had evolved to "Heel Mfg." The 1984 advertising material of the debtor also contained a reference to "one of the on-the-road" Seminars "sponsored by another popular manufacturer."

7. It is totally impractical for the debtor, on December 7, 1984, to reschedule the location or the time frame for its proposed "trade show" and still have the potential for receiving any substantial business benefit from such show, and such a rescheduling probably would have a negative impact upon debtor's business. The defendant, however, stands to suffer an irreparable and substantial injury if those attending its "annual seminar" are distracted or confused as to the true identities of the parties and their products, or are siphoned away from the seminar because of the past acts of the debtor or those which might reasonably be forecast by the prior acts of the debtor.

*Conclusions by the Court—*

Notwithstanding the several other issues raised by the litigation in this adversary proceeding, the sole issue before the Bankruptcy Court is whether to enjoin the debtor from holding its proposed "trade show" and, if so, on what terms and conditions, if any.

The defendant takes its stand upon the ground of unfair trade practices or competition. Unfair competition can most often and most clearly be seen in the activities of a business entity which mislead the public

into a belief that the products or services offered for sale by it are those of another business entity. This generally involves the use of confusingly-similar trade names or descriptions for products and services. Less often seen and less easily discerned are improper trade practices where one business entity attempts to reap the profit or a substantial portion of the profit from the activities of another business entity in producing and offering for sale a product or service. The defendant contends that the latter type of business practice is demonstrated by the case before the Court, but it also makes reference to acts of the debtor which it claims tend to confuse the public as to the separate identities of the equipment manufactured and sold by each.

As to the latter, the debtor has adopted a trade name for its equipment which bears a substantial similarity to that of the defendant, but it seems apparent that some similarity might be inevitable. The word "seal" is used in each trade name, but each company manufactures and sells sealing equipment. It would, however, have been possible for the debtor to have adopted a trade name using the word "seal" and yet easily distinguished from the trade name used by the defendant, *i.e.,* "Seal-Best." Also, the debtor has used a cartoon in some of its advertising with a name (Sandy Seal-Mate) similar to the one used by the defendant (Sammy Seal-Mor).

There are differences, however, for "Sandy" is depicted as a woman, while "Sammy" is understood by the bankruptcy judge to be a boy or man. Although the defendant complains strongly against the advertising cartoons of the debtor which, presumably, attempt to depict one of debtor's competitors as getting rich while its customer is victimized by machinery breakdowns, the part most strongly complained about is that, from the advertising in 1982 to the advertising in 1984, the debtor has changed the name of the competition from "Acme Co." to "Heel Mfg.," which obviously rhymes with "Neal" in the defendant's name. While this change may or may not be legally impermissible—a question not

now under consideration by the Court—it has the opposite effect of confusing the two companies and their products in the minds of potential customers.

Thus, it appears that the advertising activities of the debtor have been ambivalent—sometimes contributing to a possible confusion of the two companies and their products and sometimes making a sharp distinction between them. To the extent that the debtor has laid the groundwork for possible confusion of its identity and products with those of the defendant in the minds of potential customers of the defendant who will be attending the "annual seminar," the injurious effect upon the defendant's business could be substantial but difficult, if not impossible, to measure in monetary terms; therefore, the debtor should be required to take reasonable steps to undo any such confusion and to refrain from contributing any further confusion.

The debtor's advertising activities and its trade-show promotional activities indicate a substantial insensitivity to the niceties of good relations with its business competitors, particularly in the area of attempting to convert to its benefit the ideas and sales-promotion activities of the defendant. To draw the line between legally permissible and legally impermissible activities in this area involves more discretion on the part of the Court than the application of legal principles. In a free society, one may wonder whether or not a business entity may not park its trailer alongside that of a competitor advertising trade information and refreshments and display its own sign that it offers the same and even, perhaps, better drinks. One must wonder, however, whether an equipment vendor may do this at a location where the potential customers have been lured there from far and wide by the activities and at the expense of the competitor.

Where the events must be considered by the Court at the eleventh hour, consideration of the harmful effect from the cancellation of the debtor's "trade show" must be given considerable weight by the Court. Aside from the issue of confusion of the identities and products of the two parties, the bankruptcy judge concludes that the debtor has edged across the line of propriety and legality in scheduling its "trade show" at the time and location selected by it, if one goes further and considers what the debtor might reasonably be expected to do in addition to entice across the street those potential customers in attendance at the defendant's "annual seminar." Further, considering the adverse effect upon the debtor of a change in the time or location of the "trade show", two days before its scheduled opening, the bankruptcy judge is of the opinion that its Order should not prohibit outright the holding of the debtor's "trade show" but that the debtor should be permitted to hold the "trade show" only if it takes affirmative steps to avoid or to unravel confusion of its identity and products with those of the defendant in the minds of people attending its show and if it refrains from any significant interference with the defendant's "annual seminar." The bankruptcy judge has prepared and issued an Order in accordance with the foregoing.

A request by the defendant for haste in the issuance of said Order has been heeded by the Court, and the need for the preparation and filing of these findings of fact and conclusions by the Court do not permit time for the citation of legal authorities to which the Court has been directed by the parties and which have been considered by the Court. A bibliography of these authorities will be prepared by the law clerk of the bankruptcy judge and attached hereto as an addendum.

### Addendum of Authorities

The following authorities were provided to, and considered by, the Court in reaching its decision in the case of *Tateco, Inc. v. Neal Manufacturing Company, Inc.,* AP84-0605.

*United States v. Topco Associates, Inc.,* 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972);

*International News Service v. The Associated Press,* 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918);

*Data Cash Systems, Inc. v. JS & A Group, Inc.,* 480 F.Supp. 1063 (N.D.Ill.1979);

*Traditional Living, Inc. v. Energy Log Homes, Inc.,* 464 F.Supp. 1024 (N.D.Ala. 1978);

*Boston Shoe Shop v. McBroom Shoe Shop,* 196 Ala. 262, 72 So. 102 (S.Ct.Ala. 1916).